IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TATIA THOMPSON, individually, and on behalf of JUSTIN THOMPSON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )    No. 08-2695-STA ) |
| SHELBY COUNTY and SHELBY SHERIFF'S DEPARTMENT, | ) ) ) |
| Defendants. | ) |

_____

**ORDER GRANTING DEFENDANT SHELBY COUNTY'S MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**
_____

Before the Court is Defendant Shelby County's Motion to Dismiss or alternatively for Summary Judgment (D.E. # 13) filed on January 7, 2009. Plaintiff responded in opposition on March 1, 2009. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

Plaintiff brought this Complaint pursuant to 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 1983 and alleged various theories of recovery under Tennessee law as well. Compl. ¶ 1.[1] Plaintiff's state law claims include a cause of action under the Tennessee Human Rights Act, negligence, false arrest, false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress. *Id.* at ¶¶ 2-3. Plaintiff Tatia Thompson ("Plaintiff") is the

---

[1] The Court dismissed Plaintiffs' claims under 28 U.S.C. § 1346(b)(1), the Federal Tort Claims Act, in its Order Granting Defendant Shelby County School Board's Motion to Dismiss (D.E. # 23), January 22, 2009.

1

mother of a minor son Justin Thompson ("Justin"); both are Tennessee residents. *Id*. at ¶¶ 4-5. According to Plaintiff, Justin was a student at Southwind High School ("Southwind"). *Id*. at 2. One day in November 2007, as Justin was walking home from school, he was attacked by several males who were also students at Southwind. *Id*. Plaintiff immediately went to the school to report the incident to the principal and the school security officer. *Id*. Because the attack occurred off school property, the principal informed Plaintiff that he could not take action against the assailants. *Id*. The principal advised Plaintiff to pick Justin up from school in the future rather than have him walk home alone, advice which Plaintiff followed. *Id*.

In 2008 Plaintiff transferred her son to another school, Arlington High School ("Arlington"), out of concern for his safety. *Id*. In February 2008, a video of the November 2007 attack on Justin appeared on YouTube and was obtained by local television stations. *Id*. Subsequently, Shelby County Sheriffs deputies came to Arlington and arrested Justin while he was in class. *Id*. at 2-3. Justin was taken to the Shelby County Juvenile Court detention center. *Id*. The Shelby County School Board immediately suspended Justin indefinitely. *Id*. Local news reports covered the story and aired photographs of Justin reporting that Justin was a member of a local gang. *Id*. at 3. Upon closer examination, the Schools determined that Justin was the victim of the attack depicted in the video and reinstated him. *Id*.

As a result of these events, Plaintiff alleges that her son has experienced severe mental anguish, embarrassment, and harassment at school. *Id*. Justin has had to undergo psychological counseling for depression and nightmares. *Id*. Plaintiff also alleges that she has also had to undergo psychological counseling and suffered economic losses. *Id*.

Plaintiff's Complaint asserts negligence as a cause of action against Shelby County for its

2

failure to investigate the situation prior to taking Justin into custody and for failure to trains its deputies. *Id*. Plaintiff also alleges that Shelby County is vicariously liable for the actions of the Shelby County sheriffs deputy who is liable to Justin for false arrest and false imprisonment. *Id*. at 4. Finally, the Complaint contains allegations against Shelby County for intentional and negligent infliction of emotional distress. *Id*.

In its Motion to Dismiss, Shelby County argues that Plaintiff has failed to state a claim pursuant to Section 1983. Additionally, Shelby County contends that it is entitled to summary judgment as to Plaintiff's Section 1983 claim because Plaintiff cannot demonstrate that Shelby County deprived Justin of his constitutional rights by taking him into custody. Finally, Shelby County seeks the dismissal of all of Plaintiff's state law claims against it.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[2] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[3] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[4] "The Federal Rules of Civil

---

[2] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[3] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[4] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 889, 902 (6th Cir. 2003).

Procedure do not require a claimant to set out in detail all the facts upon which he bases his claim."[5]

The Supreme Court has more recently stated that the Federal Rules "do not require a heightened fact pleading of specifics, but only enough facts to state a claim that is plausible on its face."[6] The Sixth Circuit has subsequently acknowledged "[s]ignificant uncertainty" as to the intended scope of *Twombly*.[7] Therefore, the Sixth Circuit has articulated the following as the standard of review for 12(b)(6) motions: on a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."[8] Thus, although the factual allegations in a complaint need not be detailed, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."[9]

As for motions for summary judgment, Federal Rule of Civil Procedure 56(c) provides that a

---

[5] *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

[6] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) ("retiring" the "no set of facts" standard first announced in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

[7] *Weisbarth v. Geauga Park Dist.,* 499 F.3d 538, 541 (6th Cir.2007); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 337 (6th Cir.2007) ("We have noted some uncertainty concerning the scope of *Bell Atlantic Corp. v. Twombly,* ... in which the Supreme Court 'retired' the 'no set of facts' formulation of the Rule 12(b)(6) standard ....").

[8] *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Twombly,* 127 S.Ct. at 1974 (2007)).

[9] *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (emphasis in original) (citing *Twombly,* 127 S.Ct. at 1964-65).

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[10]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[11] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[12] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[13] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[14] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[15]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

[10] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[12] *Celotex*, 477 U.S. at 324.

[13] *Matsushita*, 475 U.S. at 586.

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[15] *Id.* at 251-52 (1989).

5

party will bear the burden of proof at trial."[16]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[17]  Finally, the "judge may not make credibility determinations or weigh the evidence."[18]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[19]

## ANALYSIS

### I.     *Defendant Shelby County Sheriffs Department*

Defendant Shelby County has argued that the Shelby County Sheriffs Department ("SCSD") should be dismissed as a party to this suit because the SCSD is not a separate legal entity subject to suit.  It is true that no Section 1983 claim accrues against a department of a local government entity.[20]  In the absence of a showing to the contrary, the SCSD is dismissed as a party to this matter.

### II.    *Standing of Tatia Thompson*

Plaintiff Tatia Thompson ("Thompson") has brought suit on behalf of her minor son, J. Thompson, and also in her individual capacity.  In her Complaint, Thompson alleges that she has

---

[16] *Celotex*, 477 U.S. at 322.

[17] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[18] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[19] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[20] Martin A. Schwartz & Kathryn A. Urbonya, *Section 1983 Litigation* 85 (2d ed. 2008).

"had to undergo psychological counseling and has suffered economic losses" as a result of Defendant's conduct and the treatment of her son. It is no doubt true that a parent can be deeply affected by a child's difficult circumstances or trying experiences. However, with respect to Section 1983 claims, it is settled in this Circuit that a claim under Section 1983 "is entirely personal to the direct victim of the alleged constitutional tort."[21] A family member of the purported victim has no right to recover under Section 1983 for his or her own alleged injuries.[22] Thompson has failed to allege any other cause of action under federal law in her individual capacity against Defendant. Therefore, Tatia Thompson's Section 1983 claim brought in her individual capacity against Defendant Shelby County is dismissed.

### III. *Section 1983 Claim Against Defendant Shelby County*

Construing the Complaint in the light most favorable to the Plaintiff and accepting all factual allegations as true, the Court concludes that Plaintiff has failed to state a Section 1983 claim against Shelby County. Section 1983 creates a cause of action when there is a deprivation "of any rights, privileges, or immunities secured by the Constitution," as a result "of any statute, ordinance, regulation, custom, or usage, of any State."[23] In cases of local government liability, a plaintiff must allege the following: (1) that the plaintiff has suffered a deprivation of a

---

[21] *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (citations omitted).

[22] *Id*. ("no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members").

[23] 42 U.S.C. § 1983.

7

constitutional right; and (2) the local government is responsible for that violation.[24] Furthermore, a local governmental entity, such as a county government, "is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the [entity] itself is the wrongdoer."[25] Instead a plaintiff must allege that the constitutional tort was a result of a policy or custom of the local government entity itself.[26]

A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law."[27] In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy."[28] It must reflect a course of

---

[24] *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 505-506 (6th Cir. 1996).

[25] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121 (1992). *See also Jett v. Dallas Independent School District*, 491 U.S. 701, 726-29 (1989) (discussing history of civil rights statutes and concluding that Congress plainly did not intend to impose vicarious liability on counties, municipalities or other local governmental bodies); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (rejecting simple vicarious liability for municipalities under § 1983).

[26] *City of St. Louis v. Praprotnik*, 458 U.S. 112, 122 (1988) (interpreting rejection of *respondeat superior* liability by *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978), as a command that "local governments . . . should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights"); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986) (same); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) (rejecting claims against city and county and holding that "in order to state a claim against a city or a county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional 'policy' or 'custom' of the municipality", citing *Pembaur*).

[27] *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.), *cert. denied,* 510 U.S. 826, 114 S.Ct. 90, 126 L.Ed.2d 57 (1993).

[28] *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940).

action deliberately chosen from among various alternatives.[29] In short, a "custom" is a "legal institution" not memorialized by written law.[30] Additionally, Plaintiff must show a direct causal link between the custom and the constitutional deprivation, that is, "the particular injury was incurred because of the execution of that policy."[31]

Plaintiff's Complaint has failed to allege that Shelby County is liable for any violation of Justin's rights that would implicate Section 1983. As an initial matter, the Complaint mentions Section 1983 only once to indicate that claims are being stated pursuant to Section 1983 and other statutes. It is clear from the rest of Plaintiff's Complaint that her claims sound in negligence and other common law torts. Plaintiff organized the Complaint under separate headings for each cause of action: negligence, false arrest and false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress. Under the section of the Complaint headed "Negligence," Plaintiff alleged that the SCSD was "negligent arresting and incarcerating Justin at school without any justification or any investigation." In the same section, Plaintiff claims that Shelby County was "negligent in that they failed to provide adequate training for the Sheriffs deputies."[32] Plaintiff seeks to hold Shelby County liable for the SCSD's arrest of her son and for its own negligent failure to train SCSD deputies properly: "Shelby County and the Shelby County Sheriff's Department are vicariously liable for the

---

[29] *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

[30] *Feliciano,* 988 F.2d at 655.

[31] *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted), *cert. denied,* 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).

[32] *See* Compl. 3.

9

actions of the deputy."[33]  This type of vicarious liability was clearly rejected by the Supreme Court of the United States in *City of Canton v. Harris*.  Even if Plaintiff could show that Shelby County was somehow negligent in training SCSD deputies, negligence does not constitute a Section 1983 violation under *Monell*.[34]  Therefore, on this basis alone, Plaintiff's Complaint fails to state a Section 1983 claim against Shelby County.

Putting aside the insufficiency of Plaintiff's allegations of negligence and vicarious liability, Plaintiff has further failed to allege that her minor son suffered a constitutional tort because of a policy or custom of Shelby County.  First, noticeably absent from Plaintiff's Complaint are any references to a constitutional deprivation under the Fourth or Fourteenth Amendments for her son's arrest.  Instead Plaintiff has pled the Tennessee common law torts of false arrest and false imprisonment.  Second, the Complaint never mentions any policy or custom attributable to Shelby County or that such a policy or custom was the moving force behind Plaintiff's injuries.  Plaintiff's bare allegations only aver that the SCSD arrested her minor son without justification and without investigation and that Shelby County failed to train its deputies.  While making arrests without probable cause and failure to train are potential grounds for bringing Section 1983 claims, Plaintiff has failed to allege that Shelby County's failures were "so permanent and well settled as" to constitute a custom or policy.  Plaintiff has recited no set of facts in her Complaint from which the Court could even infer the existence of such a custom or policy.  Rather than bringing suit against the individual deputies who conducted the investigation and effected the arrest, Plaintiff has brought suit against Shelby County.  However,

---

[33] Compl. 4.

[34] *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006); *Yancey v. Carroll County, Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989).

Shelby County cannot be held liable simply because it employed alleged tortfeasors, who notably are not named as defendants in this suit. Plaintiff bears the burden to allege that it was the policy or custom of Shelby County concerning the investigation of criminal accusations prior to making an arrest or the training of its sheriffs deputies that led to her son's alleged constitutional deprivations. This Plaintiff has failed to do. Therefore, as a matter of law, Plaintiff has failed to state her Section 1983 claim against Shelby County.[35]

In the alternative, even if the Court construed Plaintiff's Complaint to state a viable Section 1983 claim against Shelby County, Shelby County would still be entitled to summary judgment. When viewing the evidence in a light most favorable to Plaintiff, Plaintiff has failed to carry her burden to show that there is a genuine issue of material fact for trial.[36] In order to make out a *prima facie* Section 1983 claim, Plaintiff must establish that her son suffered the deprivation of a constitutional right. However, Plaintiff has not adduced any evidence from which a reasonable juror could find that Shelby County deprived her son of his constitutional rights, namely his Fourth Amendment right to be free from arrest without probable cause.

It is well established that any arrest without probable cause violates the Fourth Amendment.[37] For a police officer to have probable cause for arrest, there must be "facts and

---

[35] *Wade v. City of Jackson*, 36 Fed Appx. 546, 547 (6th Cir. 2002); Stitts v. Staples, 156 F.3d 1232 (6th Cir. 1998).

[36] Shelby County has styled the instant Motion as a "Motion to Dismiss or in the alternative for Summary Judgment," briefed the applicable law governing motions for summary judgment, and produced documentary evidence outside the pleadings. In response Plaintiff briefed the applicable law on summary judgment and attached exhibits outside the pleadings to its response. Therefore, both parties had the opportunity to brief the Motion as if a motion for summary judgment.

[37] *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003); *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th Cir. 2000); *Ahlers v. Schebil,* 188 F.3d 365, 370 (6th Cir.

circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense."[38] The probability of criminal activity is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest."[39] Probable cause requires only the probability of criminal activity not some type of "prima facie" showing.[40] Once an officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect.[41] In the Section 1983 context, the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible.[42] Where a court is called upon to determine whether a plaintiff's Section 1983 action should be dismissed on summary judgment, a court is to "evaluate for some minimal showing of

---

1999); *see also Baker v. McCollan,* 443 U.S. 137, 142-43, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty").

[38] *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *see also Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir. 2002).

[39] *Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir. 1999); *see also Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed ... after the fact.")

[40] *Crockett*, 316 F.3d at 580 (quoting *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir. 1988)).

[41] *Crockett*, 316 F.3d at 580-81.

[42] *Id*.

credibility any evidence that the [arresting officers] did not have probable cause."[43]

In this case Shelby County has produced evidence which would establish probable cause for Justin's arrest thereby precluding a finding that Justin Thompson suffered the deprivation of a constitutional right. Shelby County has attached as an exhibit to its Motion a video recorded by another student showing the altercations for which Justin and two other young men were charged. According to Shelby County, the video forms the basis for the Shelby County School Resources Officers finding of probable cause that Justin had committed a crime.

It is undisputed in this case that the video depicts Justin involved in what appear to be two separate fights with two other minors, Jeremy Lowe and Darren Taylor. It is further undisputed that the video showed that Justin was wearing a yellow, hooded sweatshirt and was initially the victim of an assault.[44] The video shows that the male who first assaulted Justin threw the first punch and then in one motion pulled Justin's hood over his face and threw him to the ground (0:05). The assailant was later identified as Darren Taylor ("Taylor"). Taylor appears to kick Justin while he is down and then pull him back up by the hood (0:07). At that point Justin spins around and appears to attempt to tackle Taylor by lowering his shoulder into the assailant's abdomen and driving him backwards and up against a fence (0:11). Taylor is seen punching Justin in the back while Justin remained in the stooped position and appears to resist Justin's attempts to take him down to the ground (0:14). Other unidentified males then enter the picture and appear to search Justin's pockets while Taylor holds Justin in the same stooped

---

[43] *Yancey*, 876 F.2d at 1243.

[44] Def.'s Mot. 5, Allegation 7(1); Pl's Resp. 3. In a statement given to school officials after the arrests, Darren Taylor admitted that he had initiated the fight with Justin. Pl.'s Resp. Ex. 3, 12.

position (0:24). Taylor finally releases Justin and the initial altercation is over (0:37). Justin then stands upright and is seen removing his yellow sweatshirt and then his black undershirt and briefly clenches his fists (0:44). At this point a second male removes his shirt and moves toward Justin in an aggressive posture (0:53).[45] The second male, later identified as Jeremy Lowe ("Lowe"), appears to say something to Justin and then throws a flurry of punches in quick succession (0:55). The second altercation is over after an unidentified male appears to restrain Lowe (0:57). The remaining 1:40 of the video depicts different students reacting to the fights that had just taken place and making comments and hand gestures to the camera.

     Justin and the other two minors were taken into custody and charged with assault, disorderly conduct, and inciting a riot. Tenn. Code Ann. § 39-13-101 defines an assault as "a person... who (1) Intentionally, knowingly or recklessly causes bodily injury to another; (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39-17-305 defines the crime of disorderly conduct to include "a person... who, in a public place and with intent to cause public annoyance or alarm: (1) engages in fighting or in violent or threatening behavior." Tenn. Code Ann. § 39-17-304 defines the crime of incitement to riot as "a person... who incites or urges three (3) or more persons to create or engage in a riot."

     The issue presented is whether the officers had probable cause to believe that Justin had committed a crime. In this context, "[p]robable cause does not require the same type of specific

---

[45] In a statement given to school officials, Jeremy Lowe admitted that he was the second male to fight Justin on the video. Pl.'s Resp. Ex. 3, 11.

evidence of each element of the offense as would be needed to support a conviction."[46] In order to have probable cause to take Justin into custody, the officers reasonably had to believe that Justin intentionally or knowingly caused physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative; engaged in fighting or in violent or threatening behavior in a public place and with intent to cause public annoyance or alarm; or incited or urged three (3) or more persons to create or engage in a riot. The arrest tickets and Taylor's affidavit show that at the time of the arrest, the officers had viewed the video of the fights on YouTube. The officers went to Southwind High School where they believed the minors on the video were enrolled. The officers notified the principal of the video and what it depicted. The student who made the video was identified and provided a copy of the video to the officers. Working with school officials, the officers identified several Southwind students who were seen on the video including Lowe, Taylor, and Justin. The officers were able to establish when the fight occurred and the location of the fight. D. Taylor, one of the investigating and arresting officers, has averred that Justin appeared to attempt to initiate the second physical altercation in the video when Justin removed his outer garments.[47] Justin also admitted to Taylor that he had been involved in a fight with one of the students on a previous occasion as well.[48] The officers completed arrest tickets stated that they observed the three young men fighting and "displaying conduct unbecoming of a juvenile" on the video.

      Based on this information, the officers reasonably believed that probable cause existed

---

[46] *Adams v. Williams,* 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

[47] Taylor Aff., ¶ 5, ex. 1, Def.'s Mot.

[48] *Id.*

that Justin had committed one of the crimes charged.  Even though it is now undisputed that Justin was the victim of the first fight, the officers had probable cause at the time to believe that Justin committed an assault and engaged in disorderly conduct.  Justin is observed lowering his shoulder into Taylor's abdomen and driving Taylor back several feet in an apparent attempt to take Taylor down to the ground.  Although Plaintiff contends that the officers were negligent in their investigation, the officers did not have a duty to continue investigating the incident once they established probable cause.  Likewise, the same conduct which constituted probable cause for Justin's assault charge also gives rise to a probable cause finding that he had engaged in disorderly conduct.  Justin's conduct on the video including two separate fights in a public place provide reasonable belief that he had committed that crime.  While the Court is not persuaded that probable cause existed to charge Justin with inciting a riot, it need not reach this issue.[49]  The officers clearly had probable cause to make the arrest whether they charged Justin with one crime or many crimes.

Based on the information available at the time of the arrest, the facts available to the officers were sufficient to give rise to the conclusion that there was a reasonable probability that Justin had committed the offense of assault and/or disorderly conduct.  Viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that the officers had lacked probable cause to arrest Justin.  Because there was probable cause for her son's arrest, Plaintiff cannot satisfy the first prong of her Section 1983 claim: that Shelby County violated her son's constitutional right not to be arrested without probable cause.  Therefore, Shelby County is

---

[49] Viewing the video in the light most favorable to Justin, it is certainly cannot be said that charging Justin with incitement to riot was "the only one reasonable determination possible" in this case.

16

entitled to summary judgment as to Plaintiff's Section 1983 claims.

### IV.     *State Law Claims*

Having dismissed Plaintiff's Section 1983, the basis for federal jurisdiction in this case, only Plaintiff's state law claims against Shelby County remain.  It is settled law that the district court may exercise jurisdiction over a pendent state law claim, even after the basis for removal to federal court has been eliminated, if recommended by a careful consideration of factors such as judicial economy, convenience, fairness, and comity.[50]  Generally, if the federal claims are dismissed before trial, the state claims should be dismissed as well.[51]  Therefore, Plaintiff's claims against Shelby County brought under Tennessee common law are dismissed.

### CONCLUSION

Plaintiff's Complaint has failed to state a claim against Shelby County pursuant to Section 1983.  Plaintiff has failed to allege that a Shelby County custom or policy was the moving force behind her son's alleged constitutional injuries.  Alternatively, the Court holds that Shelby County is entitled to summary judgment because Plaintiff has failed to adduce any evidence that her son suffered the deprivation of a constitutional right.  Having dismissed any claim which might form the basis for federal jurisdiction, the Court also declines to exercise jurisdiction over any of Plaintiff's state law claims against Shelby County.  Therefore, Shelby

---

[50] *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

[51] *Taylor v. First of Am. Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992) (citing *Gibbs,* 383 U.S. at 726).

County's Motion is **GRANTED**.

**IT IS SO ORDERED.**

                                          **s/ S. Thomas Anderson**
                                          S. THOMAS ANDERSON
                                          UNITED STATES DISTRICT JUDGE

                                          Date: April 15th, 2009.